SCOTT J. SAGARIA (BAR # 217981)
sjsagaria@sagarialaw.com
ELLIOT W. GALE (BAR #263326)
egale@sagarialaw.com
JOE B. ANGELO (BAR #268542)
jangelo@sagarialaw.com
SCOTT M. JOHNSON (BAR #287182)
sjohnson@sagarialaw.com
**SAGARIA LAW, P.C.**
3017 Douglas Blvd., Ste. 200
Roseville, CA 95661
408-279-2288 ph
408-279-2299 fax

Attorneys for Plaintiff
Marina Grimbleby

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| **MARINA GRIMBLEBY,** <br><br> Plaintiff, <br><br> v. <br><br> Experian Information Solutions, Inc.; First Premier Bank <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR DAMAGES: <br><br> 1. Violation of Fair Credit Reporting Act; <br> 2. Violation of California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff **MARINA GRIMBLEBY**, an individual, based on information and belief, to allege as follows:

## **INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b)) and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a). Plaintiff seeks redress for the unlawful and deceptive practices

committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt.

2. Here First Premier Bank (hereinafter "FPB") is reporting that Plaintiff's account has both an outstanding balance and past due balance rather than discharged in bankruptcy.

3. Such information was transmitted post discharge despite FPB and Experian having knowledge of Plaintiff's bankruptcy.

4. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

5. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

6. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

7. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

8. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

9. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

10. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

11. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

12. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.
13. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.
14. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.
15. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.
16. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.
17. There are 28 FICO Scores that are commonly used by lenders.
18. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).
19. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.
20. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
21. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.
22. Each of the five factors is weighted differently by FICO.

23. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
24. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.
25. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.
26. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.
27. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

**Metro 2**

28. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.
29. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.
30. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
31. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
32. The CDIA is *The* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:

   a. The CDIA offers a FCRA certificate program for all CRAs.
   b. The CDIA offers a FCRA awareness program for all CRAs.
   c. The CDIA offers a FCRA Certificate program for DFs.
   d. The CDIA offers a FCRA awareness program for DFs.
   e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
   f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.
   g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

33. The CDIA's Metro 2 is accepted by all CRAs.
34. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
35. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
36. The three main credit bureaus helped draft the CRRG.
37. The CRRG is not readily available to the public. It can be purchased online for $229.45.
38. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.
39. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.
40. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.
41. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

## Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator

42. When a consumer files bankruptcy certain credit reporting industry standards exist.
43. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.
44. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.
45. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.
46. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.
47. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.
48. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.
49. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.
50. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.
51. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.
52. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.
53. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.
54. The lack of a CII reported also suggests that creditors are free to collect against a consumer as an individual or that no stay exists to prevent *in personam* collection activity.
55. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

56. Under the Fair Credit Reporting Act a bankruptcy can be reported for ten years.
57. The ten-year rule for reporting runs from the date the bankruptcy was *filed.*
58. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.
59. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.
60. Failure to reference the bankruptcy filing (CII field) and or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

### Metro 2 Payment History

61. A consumer credit report contains a payment history section
62. Each field corresponds to a particular month in a particular year.
63. Under Metro 2 when a consumer makes a scheduled timely payment a 0 is reported in the corresponding month and year payment history field.
64. The Metro 2 indicator "1" is reported in the corresponding month and year field when a consumer is 30 days late on a payment.
65. The Metro 2 indicator "2" is reported in the corresponding month and year field when a consumer is 60 days late on a payment.
66. The Metro 2 Indicator "3" is reported when a consumer is 90 days late, a "4" is reported when a consumer is 120 days late, a "5" is reported when a consumer is 150 days late, a "6" is reported when an account is 180 days later, and an "L" is reported when an account is eventually Charged Off.
67. The "L" sometimes manifests itself on credit reports as an "FP" or Failure to Pay.
68. Once an "L" is reported there should not be any subsequent payment history reported given that the account has been Charged Off and it is factually impossible to Charge off an account every month in perpetuity. A credit expert would find these "rolling Charge offs" inaccurate.

### Plaintiffs Credit Report

69. On March 8, 2018 Plaintiff filed for chapter 7 bankruptcy protection.
70. On June 25, 2018 Plaintiff received her chapter 7 bankruptcy discharge.

71. On August 13, 2018 Plaintiff ordered a three bureau credit report from Experian Information Solutions, Inc.; Equifax, Inc. and TransUnion, LLC to ensure proper reporting by Plaintiff's creditors after the entry of her chapter 7 discharge.
72. Plaintiff noticed a tradeline from FPB on the August 13, 2018 credit report reporting inaccurate, misleading, or incomplete information that did not comply with credit reporting industry standards.
73. FPB continued to report the account with an outstanding balance and past-due balance owed and that Plaintiff was 90 days behind on her payments.
74. The account did not indicate that it was included or discharged in bankruptcy.
75. The account at issue indicated that it was updated on July 1, 2018, which was after the entry of Plaintiff's chapter 7 discharge.

### Inaccuracy – FPB

76. Plaintiff was frustrated to see that Defendant FPB was reporting the account as having both a balance and past due balance owed instead of indicating it was discharged in bankruptcy.
77. FPB's reporting makes it appears that Plaintiff failed to address this debt in her chapter 7 because FPB has failed to report anything whatsoever that would alert creditors that FPB can no longer collect against Plaintiff on that debt.

### Willfulness

78. This was not a negligent act by Defendant FPB but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit through bankruptcy.
79. FPB is not following industry standards and is not listing the correct consumer information indicator (CII) as the CII should have been updated to E as Plaintiff's bankruptcy is discharged.
80. By indicating that the account status as unpaid without noting the chapter 7 bankruptcy filing it appears that Plaintiff has failed to address this outstanding debt thus making Plaintiff less credit worthy.

81. FPB's reporting makes Plaintiff appear less credit worthy because, if the CII E were reported the balance and past-due balance reporting would be replaced with a status notation of included and discharged in bankruptcy.

82. Such a notation alerts lenders that Plaintiff's debts with FPB have been included in bankruptcy.

83. FPB is also reporting a balance and a past due balance rather than reporting a 0 balance and past due balance under industry guidelines.

84. Rather than mark the account as included and discharged with zero balance and past due balance FPB continues to report the account delinquent i.e. unpaid with the hope that Plaintiff will pay the account at some point in the future.

85. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large.

### Damages

86. Here, Plaintiff pulled the credit report at issue at a cost of $39.95, specifically for the sole purpose of verifying that his accounts included in bankruptcy were being reported properly.

87. Plaintiff has been denied credit and or has been unable to apply for credit as a result of Defendants inaccurate and misleading reporting.

88. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, emotional harm, and excessive stress.

89. Plaintiff has been denied credit and her credit score has suffered as a result of FPB's reporting.

90. The actions of Experian and FPB as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

### FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Experian Information Solutions, Inc. – Failure to Assure Credit Reporting Accuracy.**

91. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.
92. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.
93. Had Experian maintained reasonable procedures to assure maximum accuracy Experian would never have allowed Defendant FPB to report the account as described herein.
94. As a result of Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.
95. The violations described herein by Experian was willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.
96. Experian was aware that Plaintiff filed for chapter 7 bankruptcy protection and received a discharge as its own public records section of the credit report indicated as such.
97. However, instead of correcting FPB's inaccurate reporting Experian allowed the inaccurate and misleading information to continue to be reported.

**Willfulness**

98. Experian has known for some time that it has systemic issues dealing with properly reporting debts discharged in bankruptcy. *See Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX), *Hernandez, et al. v. Experian Information Solutions, Inc., et al.*, No. 05-CV-1070 DOC (MLGx).
99. Despite class settlements Experian has still not addressed this ongoing issue. Instead it has setup a system whereby it simply rubber stamps and allows data furnishers to report inaccurate information despite Experian having knowledge of Plaintiff's discharge.
100. Consequently, Defendants Experian is liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

101. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CAUSE OF ACTION**
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendants)

**FPB – Reporting Inaccurate Information to Experian**

102. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

103. In the regular course of its business operations, FPB routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

104. FPB intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not comply with well-established industry standards AFTER plaintiff received a discharge in an intentional attempt to have Plaintiff suffer diminished and reduced credit.

105. Plaintiff alleges that FPB re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

106. Plaintiff also alleges that FPB had reason to know that the information reported on Plaintiff's accounts were misleading, inaccurate, incomplete, and did not comply with well-established credit reporting industry standards.

107. Plaintiff alleges that FPB had reason to know that by not following well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

108. Plaintiff alleges that the notice of bankruptcy filing and entry of discharge should have provided notice to FPB of its misleading and inaccurate reporting.

109. FPB failed to notify Experian that the information Defendant re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

110. FPB's communications of false information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.
111. As a direct and proximate result of FPB's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, diminished credit score, emotional distress, frustration, and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;
5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: August 31, 2018

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of this matter by jury.

Dated: August 31, 2018

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff